All right, we're ready for, I'm going to let you pronounce your name because I'm pretty sure that I'm going to mess it up, so come on up to the microphone and let us, and introduce yourself. It won't be the first time. I'm sure you're probably going to, it's very, it's Mineas, Your Honor. Mineas? All right, Mr. Mineas. Good morning, and may it please the Court. My name is Christopher Mineas. I'm here on behalf of the appellant, Justin Miller. This case is about fairness. The Court, a place of equity, whether or not it had the discretion to fully dismiss with prejudice a pro se litigant for missing two status conferences, while a case was stayed, and not only just stayed, Your Honors, but stayed indefinitely. Pending the resolution of Mr. Miller's criminal matter, which has still had not gone to trial and is currently set for September 15th, 2025, over a month from today's date, Mr. Miller was treated harshly. This district court denied relief under 60B1 without reasons, without findings, and without considering lesser sanctions. The Court should reverse and remand so the case can proceed on the merits where it belongs. Under 60B1, it is a abuse of discretion standard. It allows relief from a judgment for mistake, inadvertence, surprise, or excusable neglect. The Supreme Court and Pioneer Investment Services made clear that excusable neglect is an equitable determination guided by the totality of the circumstances. This Court, too, has emphasized that the denial of the 60B relief must be grounded in facts evaluated through a lens of fairness, especially when dismissal operates as a permanent bar to justice. Under the Pioneer Investment Services case, they evaluate four factors. The first factor is the danger or prejudice to the appellee. Second factor is the length of delay and whether the delay was reasonable. The third factor is a reason for that delay, and if that was reasonable as well. And the very last factor, whether or not the appellant acted in good faith. And I'll walk through those factors for the Court briefly. Under the first factor for the danger or prejudice to the appellee, there is no prejudice to Ohio Security. The case was a state indefinitely. And if the Court were to reverse the dismissal of Mr. Miller's case with prejudice today, it would still be on hold. It would still be on hold until the resolution of his criminal matter. It had been continued a few times, and we don't know. For all that we know, it's going forward on September 15th, 2025, but we don't know for sure if that's going to get continued or not. But either way, whether today or any time before September 15th, 2025, if there is no ruling at the criminal court, per the district court's order, the court would have been stayed either way. The length of delay evaluated under the Pioneer factor discusses the delay of Mr. Miller engaging in additional action after the dismissal. Immediately upon realizing that his case was dismissed with prejudice, the very same day he hired our office and enrolled additional counsel even before the minutes of the court were entered in onto the record. Also, he filed a Rule 60b-1 motion timely less than two months after the court's dismissal. Under the third factor, the reason for the delay was reasonable given the circumstances. Mr. Miller was facing a criminal case. His business and livelihood had just been burned down to the ground. He had no income from that business whatsoever, and he was also, as a result of everything going on, his wife filed for divorce. But he still didn't show up at court, right? Yes, Your Honor. He didn't show up to court, and I believe that there was some confusion when the case was indefinitely stayed. His understanding was that there weren't going to be any more actions or statuses or hearings until the criminal case was resolved. But there was a specific directive to show up at a particular date and a particular time, wasn't there? Yes, Your Honor. He received that via email. Even though he received it, he doesn't recall that being something that he had to attend because there's also an entry onto the record, and confusing to a pro se litigant. So on 9-6-2023, there were three entries to the record. The very last entry, which to a pro se litigant and, you know, I will say even me as an attorney, it said in parentheses, court only, but then it said deadlines and all hearings terminated after the court had already set the status conference. So that was the last minute entry that was entered in onto the record. And so when, obviously, Mr. Miller is not here to testify, but just looking at that could definitely cause confusion to a pro se litigant if that was the last thing that the court ordered that all hearings and deadlines have been terminated. A status conference to a pro se litigant can definitely be considered a hearing. I would consider it a hearing as an attorney. So I believe that was the last entry of the record on 9-6-2023. There were three entries, and that was the last entry that was entered onto the record. But even if we were to buy the argument that we should be more lenient or liberal because this is a pro se defendant, where would you draw that line, particularly in light of the two missed status conferences? Your Honor, I would draw that line to that there is no prejudice to Ohio security. Even if we were to reverse and remand the case today, it would still be pending as the criminal charge has not gone forward. The court's order on the motion to stay, what this case is, stayed indefinitely until the resolution of the criminal charge. I understand that the judge wanted to keep in touch on the case. That was not Mr. Miller's understanding. He, in a mix of trying to engage criminal counsel, which had changed, I believe, two times on him as well, just in the mix of that, obviously to a pro se litigant caused him confusion, Your Honor. So I would say that even if it was reversed today, there would be no movement on the case. We would be still waiting on the resolution of the criminal charge. And then I understand more to him missing two status conferences. I just believe, and the record is clear to show that he was under the understanding that the case was stayed indefinitely and nothing was moving forward. And then with his two status conferences, I believe the second one, his PACER account was deactivated. And for the first one, as I previously argued, Your Honor, that the last entry on the record caused some confusion to Mr. Miller, thinking that all hearings and conferences were terminated. Just to continue on to the last of the pioneer factor, I think I went over the third prong was the reason for the delay. And the last prong was whether Mr. Miller acted in good faith. As soon as he found out that the case was dismissed, he immediately sought to correct it. A pro se litigant or any litigant that didn't care about the case or didn't want to adhere to the court's orders wouldn't pick up the phone, go online, go through Google search and call multiple attorneys to see who can file a motion to enroll that very same day. He didn't call our office to ask whether or not we'd represent him for the case. He said, can you file a motion to enroll in the next five minutes because I need someone to come in and find out what's going on with the case. And that's exactly what we did, Your Honor. And so a pro se litigant, upon notice that this had happened to him from his wife or, I believe, currently his ex-wife, that a hearing was held and the case was dismissed, immediately enrolling counsel the same day before even the court had time to put minutes onto the record, shows good faith action on his part. The unique context of this case is why dismissal makes no sense here. Even if the court would have held a status conference or ordered a status conference every single month up until now, the case would still be on hold. There's no discovery deadlines. There's no hearing set. There's no motions. The case has been closed. And upon resolution of the criminal charge, it'll just be reopened and begin briefing on summary judgment proceedings and then proceed to trial. So Mr. Miller's absence for the two status conferences didn't hinder anything, didn't prejudice Ohio's security at all. Another case I wanted to discuss was the McNeil factors. Under McNeil v. Papasan, the court outlined two reasons that need to happen for the court to issue a harsh sanction of a dismissal with prejudice. A clear record of delay in consummation's conduct and, not or, the lesser sanctions would not serve the interest of justice. There's no clear record of delay. He missed two status conferences while a case was pending indefinitely. And there was obvious confusion to a pro se litigant that is clear on the record. What would be, I understand, of course, you don't want to acknowledge there should be any sanctions against your client, but what might be a permissible lesser sanction? Your Honor, I believe the court considers lesser sanctions could be monetary sanctions. You know, I understand that Ohio security does have counsel. There might be fees and costs awarded. There have been different types of sanctions. I don't think the court has a hard rule on what kind of sanctions would be allotted in this case. I will say that, you know, and it's an honor to be in the opportunity, this is the first case that I researched and any of the cases that I cited to or even the appellee cited to, none of them had a case where it was dismissed while the case was stayed indefinitely. So none of the cases that we researched, whether in my brief or appellee's brief or any case that we found that it was a case was dismissed while the case was pending indefinitely for a criminal charge. I didn't see or see any cases of that. So to answer your question, Your Honor, I don't know what the court would do in such a case because I don't think that has happened before, but my understanding that monetary sanctions could be appropriate, but we would also dispute that, Your Honor. Mr. Miller is a pro se litigant, already facing some financial hardships with the loss of his business, a divorce, and pending criminal charges, which I will get into next briefly that are really is now a misdemeanor for false swearing, which we believe that has no merits to the actual merits of this case, but I know that will be argued if this court reverses or remains this case back to the district court. And the last prong for McNeil was that lesser sanctions were not even considered. The district court didn't provide any reasons for his judgment. We don't know if the district court considered lesser sanctions. It could have considered lesser sanctions, like I stated earlier, that it could have been monetary or something else, and as I stated before, that this case is very unique. My understanding is that this was the first and only step taken was immediate full dismissal with prejudice of a pro se litigant. There was a warning after the first misstatus conference, correct? Yes, Your Honor. There was a warning that was entered into on to the record on March 15th of 2025. I do believe that in the lower court under the district court, we did follow Rule 60B1 motion where we attach as an exhibit that is in the record. I do believe that is a record site, ROA 525, his PACER notice that showed that his account was deactivated at the time that that notice came through. So, and Mr. Miller also uploaded his Gmail history showing that the PACER notices from that time period did not come to his email as well. And that is on record site 524. And just to go back, and I know I touched on this before, and just in anticipation of opposing counsel's issues that they may raise regarding Mr. Miller's criminal charges, just briefly, he hasn't been charged with fraud. He hasn't committed any felonies. It is a misdemeanor false swearing. That's what he has been charged with. And that is why the case is on hold because it is related to his civil case. And so, and even if . . . Was it false swearing in making the claim or what was . . . Your Honor, there were, and I will say this, I'm not a criminal attorney. I know that there was a lot of charges that the district attorney's office has dismissed. And he hasn't taken any plea deals because he believes he's innocent and is going forward with a crime. My question was, was it false swearing in terms of making a false affidavit in connection with the claim or what was the nature of the alleged . . . I don't recall the exact statement that was made because I do believe that this was, once the district attorney's office took a look at the record, a lot of this was dismissed and in our view, I believe it's a petty crime of what he did. And he was under extreme pressure when he was making the statements and I think that . . . I don't believe it was intentional. But again, I'm not his criminal attorney and I'm not here to argue, you know, on his behalf of his innocence. And even so, I don't believe that has any bearing on whether or not this court should reverse and remand because he has not been proven guilty. In fact, he's facing a misdemeanor charge and if that resolves or he's found not guilty, this would hopefully not have been all in vain, Your Honor. And just to close, we asked the court to reverse the denial of the 60B1 motion and remand the case for litigation on the merits. The court is a place of equity. I know that and have confidence that in this court that a court does not close the doors on a pro se litigant that is trying to argue the merits of the case, especially in the face of pending criminal charges, pending divorce, as well as the loss of his livelihood. All right. Thank you, Mr. Menias. You've saved time for rebuttal. Thank you. Ms. Jerusso? I hope I pronounced that right, but please correct me if I didn't. Yes, Your Honor. It's Jerusso. Thank you. Good morning, Your Honors. Katherine Jerusso for Ohio Security Insurance Company. May it please the Court, I'd like to begin with just giving the Court a timeline of the events that led up to the dismissal of Mr. Miller's case with prejudice. We don't have the benefit of an opinion from the district court, and I just want to make sure that Your Honors are aware of the key events. So Mr. Miller is himself an insurance agent who procured an insurance policy to cover his business. Six days after procuring that insurance policy, this fire occurred and the business completely burned down. Well, but there was something that happened three days before that, right, that he contacted our — tell us about that. Yes, Your Honor. There's evidence in the record that Mr. Miller actually contacted Ohio Security after writing his own policy and asked Ohio Security, without providing his name, whether there was any delay before the policy became active or whether he would be able to submit a claim at such an early date. That's — Ohio Security has record that that conversation occurred. So after the fire occurred — I thought there was more to it than that, that that request — I'm asking you to correct me with the record — Sure. — but that the request said something about if some device gets left on accidentally at the premises — Yes, Your Honor. — and it causes it to burn down, is that covered? Is that what the request said? Yes. There were two different ones, and you're correct, Your Honor, there was another request where he asked for clarification as to whether, if a device was left on, would that be covered in the event of a fire. And three days later, a device was left on and it burned to the ground. Is that right? Yes. All right. So Ohio Security denied the insurance claim based on its fraud provision, and then this lawsuit occurred in April 2022. Mr. Miller was deposed in the lawsuit for five hours in January 2023. At that deposition, Ohio Security confirmed additional discrepancies in Mr. Miller's account of his actions on the night of the fire, including that he had claimed that, on the night of the fire, he was working on a sign. His business was sports equipment and signs. He provided signs for other businesses. Ohio Security discovered evidence that the sign he claimed he was working on on that night already had been installed at the business that had requested it days before the fire. So there's no way that he could have been working on that sign at his business on the night of the fire. He'd already finished it and it had been installed. So Mr. — and that came out during his deposition in January 2023. Then in March 2023, Mr. Miller was arrested for false swearing under oath. And it's not clear from the Bill of Information what the specific statement is, but we do know that the statement at issue was made on October 11, 2021, which I believe is the same night that the fire occurred. So — Is that — I assume, Your Honor, yes. So then, after Mr. Miller was arrested, discovery continued in the case. He participated in two more depositions. And additional evidence was developed through those depositions that was incriminating in connection with the fire. Finally, in August — on August 9, 2023, Mr. Miller's counsel asked to withdraw because his client — he claimed that his client was not cooperating with the representation. So this was, by this point, five months after he was arrested and after extensive discovery had occurred in the case. On August 18, Magistrate Ayo held a telephone conference and Justin Miller himself participated. The magistrate told the parties that the motion to withdraw would be granted, and at that time he emphasized to Mr. Miller the need to be diligent in securing replacement counsel and told him that he would be subject to all applicable rules and orders in his capacity as a pro se plaintiff. After that — after that conference was held, Ohio Security filed a motion for summary judgment on August 25, 2023, you know, offering into the record all the evidence that had developed that Mr. Miller had committed fraud in connection with his insurance claim. Then Mr. Miller filed a motion to stay the case. And over Ohio Security's objection, the judge stayed the case, reasoning — because of the withdrawal of plaintiff's counsel and because the judge felt that the pending criminal charges involved the same fire at issue in this suit. And again, Ohio Security objected, among other reasons, because this is a suit that Mr. Miller had filed himself. This wasn't a situation where Mr. Miller was sued and was in the capacity of a defendant and then an ongoing criminal case might harm him in the civil case. At — on 9-6-23, Judge Joseph entered the minute entry setting the in-person status conference for March 1, 2024. It is very clear from the record that the parties were to appear in person for that status conference. And Mr. Miller does not dispute that he received notice of that status conference being set. On March 21, Mr. Miller failed to appear for the in-person status conference. The court, at that point, reset the status conference for September 20, 2024, and issued an order warning Mr. Miller that the matter would be dismissed for lack of prosecution on September 20, 2024, if he failed to appear. Miller was sent that notice through ECF. On September 20, 2024, Mr. Miller failed to appear for the reset status conference. Mr. Minious made reference to something in one of those notices or a notice somewhere on the docket that — something to the effect that all hearings are — are canceled. Your Honor, this is the first I've heard of this argument, and, frankly, I'm not aware of what he's — of what he's talking about from the docket. I believe that I've pulled all the relevant minute entries leading up to the dismissal, and I'm not aware of the minute entry that he's referring to. But there is a very clear minute entry on 9623 — let me make sure — We'd be able to go to the district court docket sheet and see whether there's anything like that. Yes, Your Honor. But there is a very clear minute entry saying that the parties are to appear in person on March 1, 2024. Okay. So we're asking the court to affirm Judge Joseph's dismissal with prejudice of plaintiff's case. And Judge Joseph's decision is reviewed for abuse of discretion. As this court is aware, it's a very deferential standard. There's a two-factor test. First, there must be a clear record of contumacious conduct by the plaintiff. Here we have that. We have Mr. Miller's action of requesting that the court stay the case, so putting the case on ice and preventing Ohio Security from having its motion for summary judgment heard. And then, after taking that action and being ordered that he needed to appear for a status conference, failing to appear with no explanation — no credible explanation of why he failed to appear, and he admits that he had notice of it. Then, after he failed to appear for the first status conference, he was given notice that it would be reset, and that if he failed to appear, the case would be dismissed with prejudice. And despite receiving that notice, he again failed to appear for a second status conference. So there is a record of contumacious conduct based on those facts. And the second factor is that a lesser sanction would not better serve the best interests of justice. Well, here, the record shows that Judge Joseph attempted a lesser sanction of warning the litigant when he failed to appear for the first status conference, that if it happened again, his case would be dismissed with prejudice. This Court's opinion in the Penney case — that's 841 Fed Appendix 655 — confirms that a warning qualifies as attempting a lesser sanction, and here the district court judge did that. The lesser sanction was ineffective. And just to point out along those lines, even after having his case dismissed with prejudice, Mr. Miller has continued delaying and flouting rules in connection with his appeal in this case. He's repeatedly — he's repeatedly asked for briefing extensions. The initial brief he filed did not contain any record citations. He was ordered to correct that and given two weeks to do so, and did not do so within the time he was given. And then he filed his paper copies of his brief and record excerpts late, and the oral argument acknowledgement and designation form also were filed late. So there's clearly a record of flouting rules. And then the Court also looks for one of three aggravating factors. Here, we do have the aggravating factor that Mr. Miller personally contributed to what occurred here. At the time of the dismissal, Mr. Miller was acting as his own counsel. This Court's opinion in Brinkman, 813 Fed Second 744, in that case the Court observed that that aggravating factor was met where the litigant was pro se, and the Court commented that in that case it was not a case where the Court had visited the sins of an attorney on an innocent client. The pro se client represented himself and would alone bear the consequences of his own conduct. I'm going to interrupt you just a minute because I'm looking at the whole docket sheet here, and maybe this can be clarified on rebuttal, that there's a lot of docket entries, but I do see a docket entry number 39 on September 6th that says in-person status conference set for March 1st. And then the next docket entry, which is not numbered, also is September 6th, that says deadline slash hearings terminated. Maybe that's what he was referring to. I don't know. It could be. It's right here on the docket sheet. But if that is what he's referring to, it does say court only, which means that was only visible to the Court. It wouldn't have been visible to any of the parties. Oh, good point. Okay. I was not aware of that docket entry. An experienced magistrate judge from the Eastern District can explain to us better than I can understand what that means on the docket. Okay. Okay. So then moving along, I think that covers the involuntary dismissal under Rule 41B to address the denial of the motion for relief from judgment under Rule 60B. There, the Court reviews the pioneer factors. And Judge Smith, your opinion in which case was it? In the Silver Creek case, 534, Fed Third, 469, in that case, this Court wrote that all factors did not necessarily have to be considered. All of the pioneer factors did not necessarily have to be present. Here, however, I think they are all met. We have, first, prejudice to Ohio's security. Mr. Miller had requested and received the benefit of a stay of this case, even though he filed the lawsuit, and even though Ohio's security objected, and then having received that stay, then refused to show up for status conferences that he was ordered to appear for in person. As for the reason for his actions, Mr. Miller has given us two reasons. First, that his criminal attorney, he believed that his criminal attorney was going to notify the district court regarding the criminal case's status. This Court's precedent is clear that clients can be held accountable for their attorney's omissions. The Silver Creek management case tells us that. Here, Mr. Miller has stretched the argument even farther, claiming he was relying on an attorney that represented him in a different case, and not even an attorney that represented him in this case. And then Mr. Miller also claims that his CMECF account was delinquent at the time that the warning was issued. Well, first, the delinquency notice that he submitted says that his access to PACER was not going to be discontinued until March 6th. Well, the Court's minute entry was entered before that, resetting the status conference. So there's no question that he would have received, or at least he hasn't proven that his PACER account would have been disconnected at the time the status conference was reset. Because that minute entry went out on, that's record page 501. It went out on March 1st, 2024, the initial minute entry. And then, but in any event, this Court has rejected similar arguments related to computer and also the Trevino case, in which counsel claimed that they didn't receive notices or that notice went into the wrong e-mail box, and the Court found that inadequate justification. And perhaps most importantly, if Mr. Miller received a delinquency notice, as a pro se litigant in this case who's been advised that he's going to be subject to all rules of court, he had an obligation to either bring his PACER account into compliance, or at least go to the Court or call the Court and find out what was going on with his case. He had six months between the first status conference and the second status conference during which he could have done that at any time. And the fact that he's able to, within hours, enroll counsel after missing the second status conference shows that he was capable of action, and in fact, somehow knew what had happened at the status conference, even though he's claiming that his PACER account is delinquent and a minute entry had not gone out. So, and finally, the pioneer factor, whether the movement acted in good faith. There's just simply no showing of good faith here, Your Honors. There's no—Mr. Miller has not explained why he missed the first status conference, and his explanation regarding his PACER account doesn't hold water with respect to the second. And he was on notice that he was subject to all rules of the Court, and also that his case would be dismissed with prejudice if he did not appear for the second status conference. So for those reasons, Your Honors, Mr. Miller cannot show that the District Court abused its discretion in dismissing his case with prejudice and in denying his Rule 60 motion, and we would ask the Court to affirm the District Court's dismissal. Ms. Jerusalem, thank you, and Mr. Meneas for rebuttal. I'd just like to thank the Court for allowing us to be here today. Just a quick rebuttal, if I may. On behalf of Mr. Miller, I do believe that in the past, or opposition in our argument by opposing counsel, a few minutes were spent on Mr. Miller's criminal charges, which he has not been found guilty of, that are mere allegations, and per the standards, under the abusive discretion standard, those cannot be considered as a reason for denying Mr. Miller the relief that he seeks today. Opposing counsel also mentions a hearing where there was a motion to withdraw the conference with the magistrate judge. I obviously was not participating in that, and I do believe that he was represented technically by counsel at that hearing, even though at that hearing, the Court ordered the withdrawal, and he understood that he would need to appear at certain status conferences or hearings or deal with the Court, but that was well before the motion to stay was filed. I do believe the Court was correct, it was record entry number 39. I believe that was discussed where the Court ordered some entries in there, and I'm not sure if Mr. Miller knew about the dismissal or not. I believe Judge Douglas commented that it could have been a Court viewing only, but according to Mr. Miller, he understood that the case was stayed indefinitely and that he didn't need to appear for anything further. If I may also elaborate on a specific exhibit that was mentioned, was his PACER notice, which is ROA 525, and if I can read just the last part of it, it's alleged that he has his account was active up until March 6 of 2024, which is not what the PACER notice says. It says payment must be received by 3-6 or further access to PACER will be denied. If there's further access that would be denied, then there must have been some access that was already been denied, and according to Mr. Miller, he could not access his PACER account, and I do not believe by looking at this document, it reads that he still had access at all. I do believe that there was going to be further action taken by PACER to further limit his account, but he did not, according to Mr. Miller, he did not receive the notice, and I would just like to remind the Court that the case was stayed indefinitely pending the criminal charge, so therefore, the confusion of his criminal attorney and the his criminal attorney's obligation to possibly update the District Court on whether or not the pending criminal charge was going to be resolved is excusable neglect, and is something that a per se litigant may not have understood, especially if the District Court ordered the case to be stayed indefinitely pending the criminal charge. In the Civil Creek case, Judge Smith, I do believe that case involved representation where an investor, a sophisticated investor, was represented by counsel, and the issue in that case was not analogous to our situation here. That was an investor that was represented by counsel. Here, we have a per se litigant. They missed a deadline or a order to submit evidence. There was no order here to submit any evidence. There is no pending deadlines, no pending motions, no pending hearings. Trial date has not been set, and as I stated before multiple times in my oral argument that if the Court reverses or amends this case today, it would still be as pending, or if this case had never been appealed or dismissed in the first place, it still would have been pending, and nothing would have been done all the way up until his upcoming tribal on September 15, 2025, if that moves forward. Thank you. All right. Thank you, Mr. Munoz. We appreciate your having stepped into this case under difficult circumstances to represent a client. Thank you. Happy to do it. Your case and both of today's cases, I think, are very important.